UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

J. DANA TSAKANIKAS, et al.,

        Plaintiffs,

                                      **Case No. 2:12-cv-176**

    v.                              **JUDGE GREGORY L. FROST**

                                        **Magistrate Judge Elizabeth P. Deavers**

NATIONSTAR MORTGAGE, LLC, et al.,

        Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' May 2, 2013 joint

motion to enforce settlement or to reinstate summary judgment motions (ECF No. 48), Plaintiffs'

memorandum in opposition (ECF No. 50), and Defendants' reply memorandum (ECF No. 51).

For the reasons that follow, the Court finds the motion well taken.

The underlying facts of this case do not demand a detailed recitation.  Two homeowners,

Plaintiffs J. Dana Tsakanikas and Kelly L. Tsakanikas, allege that Defendants Nationstar

Mortgage LLC and Principal Financial Group Inc. violated various provisions of the Truth in

Lending Act, 15 U.S.C. § 1601 *et seq.*, the Fair Debt Collection Practice Act, 15 U.S.C. § 1692

*et seq.*, and the Ohio Consumer Sales Protection Act, Ohio Revised Code § 1345.01 *et seq.*,

related to a loan owed by Plaintiffs.  (ECF No. 1.)  Following the close of discovery, all of the

parties filed motions for summary judgment.  (ECF Nos. 30, 31, 32.)  The Court had scheduled

these motions for a March 15, 2013 non-oral hearing.  (ECF No. 16.)  The day before the non-

oral hearing, however, the matter proceeded to mediation.  At the conclusion of the mediation,

the mediator reported to the Court that the case had settled and that a dismissal entry would be

filed by March 27, 2013.  The Court memorialized that report in a March 14, 2013 Order that also terminated the summary judgment motions as moot.  (ECF No. 44.)

Rather than filing a dismissal on March 27, 2013, Plaintiffs filed a motion for an extension of time.  They explained that more time was needed to effectuate dismissal because they had just received the settlement agreement the prior day and because "[a]dditional time is needed to obtain signatures and notarization for multiple parties, located in multiple states." (ECF No. 45, at PAGEID # 396.)  The Court granted the extension and approved the requested dismissal deadline of April 16, 2013.  (ECF No. 46.)  This date also proved to be a disappointing aspiration.  The lack of a dismissal led to an April 22, 2013 telephone conference in which the parties explained that Plaintiffs had taken the position that there was no settlement, while Defendants asked this Court to enforce the results of the mediation.  This of course led to additional motions practice, resulting in the request by Defendants for enforcement of the settlement agreement.

Defendants' reasoning is straightforward.  They explain that after the parties had reached an agreement settling this case and after the mediator had left, counsel for Plaintiffs raised for the first time a request that Defendants agree to ask credit reporting agencies to remove all negative history about the loan.  Defendants' counsel indicated that this had not been part of the settlement agreement but stated that the request would still be forwarded to Defendants. Defendants ultimately balked at changing the credit reports, which apparently prompted Plaintiffs to refuse to sign the written memorialization of their settlement and execute related releases.

Plaintiffs dispute this account of the facts.  In their memorandum in opposition, they state

that "[w]hile the parties initially believed they had reached an agreement, after the mediator left Plaintiffs realized they had not discussed everything they had intended to cover and approached Defendants to continue discussing the terms of the agreement."  (ECF No. 50, at PAGEID # 426.)  This led to continued negotiations, Plaintiffs explain, and when "[t]he parties were unable to agree upon all essential terms of the agreement by March 27th, and certainly did not have a signed agreement by then, . . . Plaintiffs moved the Court for more time to comply with its Order" requiring that the parties effectuate a timely dismissal.  (ECF No. 50, at PAGEID # 426.) Plaintiffs summarize subsequent discussions and the telephone conference by noting that "[s]adly, there was not a resolution during the conference of afterward."  (ECF No. 50, at PAGIED # 427.)

There is indeed much that is sad here, beginning with the fact that Plaintiffs have misunderstood or mischaracterized applicable rules and law concerning confidentiality. Plaintiffs assert that in describing what transpired after the mediation, Defendants have peccantly disclosed confidential settlement negotiations, but this argument amounts to little more than a red herring that fails to divert attention from Plaintiffs' own impropriety.  Contrary to Plaintiffs' contentions, Defendants have not disclosed conduct or statements made in preparation for or during settlement negotiations for any purpose precluded by S. D. Ohio Civ. R. 16.3(c)(1) or (2), but have instead disclosed emails that took place *after* the formation of the settlement.  Those emails directly inform the settlement issue before the Court today and the fact that the agreement terms excluded the credit reporting issue.  This is not confidential material made in furtherance of a settlement; it is material containing statements made after a settlement.  A court can consider post-settlement correspondence in resolving a settlement dispute.  *RE/MAX Int'l, Inc. v.*

*Realty One, Inc.*, 271 F.3d 633, 648 (6th Cir. 2001); *The Glidden Co. v. Kinsella*, 386 F. App'x 535, 541 n.1 (6th Cir. 2010).

Plaintiffs also err in positing that because this Court does not have the settlement agreement before it, the Court cannot enforce the agreement.  Plaintiffs miss or ignore the relevant point.  The parties reached a settlement.  For the limited purposes of the instant context, this Court does not care what the specific terms of that settlement are beyond the question of whether they included the removal of negative credit report information.  There is no need for review of the memorialization of that agreement or an evidentiary hearing to ascertain the settlement terms because everyone agrees and the post-mediation emails between counsel indisputably indicate that credit reporting was not part of the mediation and was not in fact even raised until well afterward.

Two points are notable in regard to Plaintiffs' various delayed conduct.  First, Plaintiffs admit that only after the mediation "Plaintiffs realized they had not discussed everything they had intended to cover."  (ECF No. 50, at PAGEID # 426.)  This is not evidence of ongoing settlement talks.  Rather, it is an admission of apparent negligence if Plaintiffs indeed intended for the credit reporting issue to be the potentially dealbreaking component of their settlement.  Plaintiffs did not raise credit reporting when it was logical to do so–at the mediation, before a settlement had been reached–and hindsight regrets will not suffice to unilaterally reopen or throw out concluded negotiations.  If Defendants do not want to permit after the fact changes as a courtesy, they need not do so.

Second, the conduct of Plaintiffs' counsel repeatedly reinforces that the parties had reached a settlement on March 14, 2013.  In an email sent later that same day, counsel for

4

Plaintiffs wrote to counsel for Defendants that "I understand we have reached a deal, which is great.  We did, however, neglect to ask that Principal and Nationstar delete all negative credit reporting concerning Plaintiffs' loan."  (ECF No. 48-1, at PAGEID # 408.)  This does not indicate that they were close to finalizing a settlement.  It indicates that the parties *had* reached a settlement and that Plaintiffs now hoped to gain one more favorable term after the fact.

Additionally, Plaintiffs and their counsel remained silent when this Court accepted the mediator's report that the parties had reached a settlement and memorialized that report in the March 14, 2013 Order.  It makes no sense that Plaintiffs and their counsel would ignore their duty to speak if they truly believed both the mediator and this Court were wrong.

Finally, further calling into question Plaintiffs and their counsel's conduct, Plaintiffs represented to this Court as grounds for their March 27, 2013 extension request only that "[a]dditional time [was] needed to obtain signatures and notarization for multiple parties, located in multiple states," for the settlement agreement they had just received.  (ECF No. 45, at PAGEID # 396.)  This says absolutely nothing about a lack of a settlement.  Instead, it implicitly represents to this Court that there is a settlement in place and that all that need be done is obtaining signatures.  Now Plaintiffs come before this Court telling the undersigned that the grounds they presented in their motion for an extension were not true because more than mere signatures were needed and there was in fact no settlement.  Suggesting prior misrepresentation to the Court is not persuasive grounds for convincing the Court that what you now say is correct.

Plaintiffs may disagree with the representations made by their counsel.  But in discussing a client's disagreement with her counsel in regard to a settlement, the Sixth Circuit has explained:

5

> In our legal system, litigants are generally bound by the acts and representations of their attorneys.  *See Link v. Wabash R. Co.*, 370 U.S. 626, 634, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).  In this case, Mezibov represented to the district court that Moore and the Postal Service had reached an agreement on all material issues and that the parties were merely awaiting the ministerial task of reducing their agreement to writing.  Thus, if there were indeed no meeting of the minds and no agreement, or if Mezibov withheld crucial information regarding the agreement from his client, Moore's recourse is not through the filing of a Rule 60(b) motion to set aside the court's order of enforcement, but rather through an action against Mezibov for legal malpractice.

*Moore v. U.S. Postal Serv.*, 369 F. App'x 712, 718 (6th Cir. 2010).  Thus, unfortunately, Plaintiffs are bound by the representations of their counsel as to the formation of the settlement.

Finally, Plaintiffs argue that, applying applicable Ohio law, this Court cannot enforce any settlement because no settlement agreement was in writing.  This is incorrect as a general proposition.  The Sixth Circuit has explained:

> Under Ohio law, "a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and acceptance."  *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337, 338 (1997) (syllabus).  Although "[i]t is preferable that a settlement be memorialized in writing, . . . an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract."  *Kostelnik v. Helper*, 96 Ohio St.3d 1, 770 N.E.2d 58, 61 (2002).  "To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear."  *Rulli*, 683 N.E.2d at 339.

*Smith v. ABN AMRO Mortg. Group Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011).  Although the court of appeals did not conclusively resolve whether Ohio's statute of frauds applies to settlement agreements related to land so as to render an oral agreement unenforceable, the appellate court did note that the "argument would likely fail because Ohio law generally treats settlement agreements that are read into the record as outside the statute of frauds."  *Id.* at 463. There is no substantive difference for these purposes between reading the terms into the record in open court and finalizing the terms to the mediator.  The mediator is an agent of this Court

6

during a Settlement Week mediation, and " '[w]here the parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract.  Neither a change of heart nor poor legal advice is a ground to set aside a settlement agreement.' "  *Id.* at 463-64 (quoting *Walther v. Walther*, 102 Ohio App.3d 378, 383, 657 N.E.2d 332, 335 (1995)).  In other words, "[a] party may not unilaterally repudiate a binding settlement agreement."  *Walther*, 102 Ohio App.3d at 383, 657 N.E.2d at 335.

This Court also notes that Plaintiffs' argument eats its own tail.  They assert that the Court cannot enforce the settlement agreement because it does not know all of the terms of that agreement and that the agreement terms must remain confidential while concurrently relying on those undisclosed terms to contend that the agreement relates to land.  Defendants disagree with this latter proposition, stating in their reply memorandum that the settlement agreement does not involve the sale or transfer of any interest in land.

The Sixth Circuit has emphasized the binding nature of an oral settlement agreement:

> The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement.  When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement. [*Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988); *Kukla v. Nat'l Distilelrs Prods. Co.*, 483 F.2d 619, 621 (6th Cir. 1973)] (observing that the power of a trial court to enforce a settlement agreement has been upheld even where the agreement has not been arrived at in the presence of the court nor reduced to writing).

*RE/MAX Int'l, Inc.*, 271 F.3d at 646-47. This is instructive because the instant case echoes many of the characteristics the court of appeals thereafter noted as significant:

> Furthermore, the objective acts of the parties reflect that an agreement had been reached.  In the first few days after the settlement was reached, Realty One communicated its belief that an agreement had been reached in a newsletter to its employees.  In addition, at various points in the post-settlement talks, RE/MAX attempted to consummate the settlement by preparing a written document.  Realty

> One also began performance of its obligations under the agreement by tendering a payment of over three million dollars and withdrawing its adverse split letters. Under Ohio law, these expressions of assent are generally sufficient to show a meeting of the minds. *See Nilavar v. Osborn*, 127 Ohio App.3d 1, 711 N.E.2d 726, 733 (1998).

*Id.* Here, Plaintiffs' counsel emailed that a settlement has been reached, Defendants subsequently attempted to consummate the settlement by preparing the paperwork, and Plaintiffs and their counsel represented to this Court that all that needed to be done to conclude the case was to obtain signatures. As in *RE/MAX International, Inc. v. Realty One, Inc.* and in *The Glidden Co. v. Kinsella*, the oral settlement agreement here is enforceable. *See also Cuyahoga Valley Ry. Co. v. U.S. Bank Trust Nat'l Ass'n*, No. 12-3215, 2013 WL 611369, at *4 (6th Cir. Feb. 20, 2013) (applying Ohio law and concluding that "[t]he fact that a settlement agreement has not been formally executed does not render the agreement unenforceable.").

The Sixth Circuit has "held that a district court 'has the inherent authority and equitable power to enforce agreements in settlement of litigation before it, even if that agreement has not been reduced to writing.' " *Moore*, 369 F. App'x at 717 (quoting *Bowater N. Am. Corp. v. Murray Mach., Inc.*, 773 F.2d 71, 76-77 (6th Cir. 1985)). Moreover, the court of appeals has recognized that "[o]nce concluded, a settlement agreement is as binding, conclusive, and final as if it had been incorporated into a judgment. Summary enforcement of a settlement agreement for which there is no dispute as to the terms of the agreement is the only appropriate judicial response, absent proof of fraud or duress." *RE/MAX Int'l, Inc.*, 271 F.3d at 650.

This Court concludes that there was a settlement here, that there is no dispute that the credit reporting issue was not part of that settlement, and that the parties do not otherwise dispute the terms of that agreement or present allegations of fraud or duress. Accordingly, the Court

8

**GRANTS** the motion to enforce the settlement agreement.  (ECF No. 48.)  The parties shall submit their notice of dismissal or agreed dismissal order on or before July 1, 2013.  The Court vacates the Final Pretrial Conference scheduled for June 24, 2013.

       **IT IS SO ORDERED**.


                                          /s/ Gregory L. Frost

                                    GREGORY L. FROST

                                    UNITED STATES DISTRICT JUDGE